UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**VAN PATRICK JOHNSON**                                          **CIVIL ACTION**

**VERSUS**                                                       **NO. 16-892**

**CITIMORTGAGE, INC. ET AL.**                                    **SECTION "B"(3)**

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant "Nationstar Mortgage LLC's FRCP 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction; FRCP 12(b)(6) Motion to Dismiss for Failure to State a Claim, and, in the Alternative, FRCP 12(E) Motion for More Definite Statement." Rec. Doc. 18. The motion was set for submission on January 18, 2017. Pursuant to Local Rule 7.5, Plaintiff's memorandum in opposition was due on or before January 10, 2017. No memorandum in opposition was filed. Further, no party filed a motion to continue the noticed submission date or a motion for extension of time within which to oppose the motion. Thus, the motion is deemed to be unopposed. As discussed below, it further appears to the Court that the motion has merit. Accordingly,

**IT IS ORDERED** that the motion to dismiss (Rec. Doc. 18) is **GRANTED AS UNOPPOSED**. Additionally, it appears that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of a note executed by Van Patrick Johnson ("Plaintiff") on November 7, 2007. Rec. Doc. 1 at ¶ 1. The $417,000.00 note was payable in monthly installments of $2,987.44 to America's Mortgage Resource, Inc. *Id.* at ¶¶ 1-2. The note was secured by a mortgage on property located at 12164 Dey Say Street, Lutcher, Louisiana. *Id.* at ¶ 2.

In August 2008, Plaintiff "requested a temporary moratorium plan on the total note principal for three (3) months . . . ." *Id.* at ¶ 3. The loan servicing agent, Defendant CitiMortgage, Inc. ("CitiMortgage"), granted the request and purportedly agreed that any delinquent payments would not be reported to credit bureaus. *Id.* at ¶¶ 4-5. When Plaintiff subsequently tried to purchase commercial property, he discovered that his credit report showed that he was approximately 30-90 days past due on his mortgage. *Id.* at ¶ 6.

Thereafter, in January 2010 Plaintiff qualified for a "Home Affordable Modification Trial Period Plan," which reduced his monthly payments to $2,006.80; on September 17, 2010, a Loan Modification Agreement (the "Agreement") reduced his monthly payments to $1,528.97. *Id.* at ¶¶ 7-8. According to this Agreement, his monthly payments were to remain at this lower rate for five years. *Id.* at ¶ 9.

On October 15, 2010 Defendant CitiMortgage notified Plaintiff that, effective November 1, 2010, his loan would be serviced by Defendant Nationstar Mortgage, LLC ("Nationstar") and that Nationstar would honor the Agreement. *Id.* at ¶ 10. However, when he received mortgage loan statements from Nationstar, Plaintiff discovered that he was being charged for additional legal and property inspection fees that were not part of the Agreement and increased his monthly payments to $3,085.39. *Id.* at ¶¶ 12-13.

On March 31, 2011, Nationstar filed a petition in the 23rd Judicial District Court ("JDC"), alleging that Plaintiff defaulted on the note. *Id.* at ¶ 15. The suit was eventually dismissed on August 14, 2013. *Id.* At some point thereafter, Plaintiff believes his loan was sold to CitiMortgage. *Id.* at ¶ 16.

On July 1, 2014, CitiMortgage filed suit in the 23rd JDC, alleging that Plaintiff failed to make payments in accordance with the Agreement. *Id.* at ¶ 17.[1] A Writ of Seizure and Sale was issued on July 8, 2014 and a Sheriff's sale was scheduled. *Id.* at ¶¶ 20-21.

Plaintiff claims that CitiMortgage "filed inaccurate and manipulated invoice statements with the court" and led Plaintiff "to believe that it was reviewing a loan modification package . .

---

[1] Plaintiff's complaint suggests that CitiMortgage referred to an October 1, 2010 agreement in their petition in state court, but we will assume that the parties were referring to the September 17, 2010 Agreement.

3

. but . . . was simultaneously initiating foreclosure proceedings . . . ." *Id.* at ¶¶ 18-19.

Consequently, on February 1, 2016, Plaintiff filed a complaint in this Court, asserting various causes of action against Defendants CitiMortgage and Nationstar, including those arising from predatory lending, accepting an excessive debt to income ratio, mortgage fraud, mortgage servicing fraud, dual tracking, and wrongful foreclosure and seizure. *Id.* at ¶ 23. Plaintiff requests preliminary and permanent injunctions enjoining CitiMortgage form seizing and/or selling Plaintiff's property, damages, and attorney's fees. *Id.* at ¶ 24, p. 10.

After filing the complaint, Plaintiff failed to serve Defendants. Consequently, the matter was placed on this Court's September 28, 2016 call docket. Rec. Doc. 3. At that time, the case was "passed for 30 days." Rec. Doc. 4. On October 20, 2016, counsel for Plaintiff submitted a summons to be issued to both Defendants. Rec. Docs. 5-7. CitiMortgage and Nationstar attempted to return executed summons' on November 16, 2016, but they were marked deficient. Rec. Docs. 8-9. The summons' were appropriately returned on November 28, 2016. Rec. Docs. 11-12. After an extension, Defendant Nationstar filed the instant motion to dismiss on December 21, 2016. Rec. Docs. 10, 13, 18.

## II. THE PARTIES' CONTENTIONS

Defendant asserts several grounds for dismissal, including four potential grounds for lack of subject matter jurisdiction and nine potential grounds for failure to state a claim. *See* Rec. Doc. 18-1 at 5, 11-19. Because the motion was unopposed and we agree that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, we will only discuss this ground for dismissal.

## III. LAW AND ANALYSIS

"The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is the same as that for a Rule 12(b)(6) motion." *SPSL OPOBO Liberia, Inc. v. Mar. Worldwide Servs., Inc.*, No. 07-3355, 2008 WL 2079918, at *1 (E.D. La. May 15, 2008) (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). Accordingly, this Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, "[i]n ruling on a motion to dismiss for lack of subject matter

5

jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (internal citations omitted), *superseded on other grounds by statute*, Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2739, *as recognized in Aamer v. Obama*, 742 F.3d 1023, 1028 (D.C. Cir. 2014).

> In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In order to provide a neutral forum for what have come to be known as diversity cases, Congress also has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens. [28 U.S.C.] § 1332. To ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). The burden of persuasion for establishing diversity jurisdiction is on the party asserting it. *Hertz Corp. v. Friend*,

6

559 U.S. 77, 96 (2010) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); 13E Wright & Miller § 3602.1, at 119). Further, subject matter jurisdiction "cannot be created by waiver or consent" and federal courts "must consider jurisdiction *sua sponte* if not raised by the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). If a court lacks subject matter jurisdiction, the case must be dismissed. *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996))).

Nonetheless, under the *Rooker-Feldman* doctrine, derived from *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923), *overruled on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "inferior federal courts do not have the power to modify or reverse state court judgments." *Matter of Reitnauer*, 152 F.3d 341, 343 (5th Cir. 1998).

> No statute exists . . . granting federal district courts jurisdiction to hear appeals from state court decisions. 28 U.S.C. § 1257 provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ." No parallel provision exists similarly granting appellate jurisdiction over state court decisions to the inferior federal courts. The Supreme Court has definitively

7

> established, in what has become known as the *Rooker-Feldman* doctrine, that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." [*Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (citing *Kimball v. The Florida Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980); *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 995 F.2d 595 (5th Cir. 1993); *Reed v. Terrell*, 795 F.2d 472 (5th Cir. 1985); *Hagerty v. Succession of Clement*, 749 F.2d 217 (5th Cir. 1984)).] "If a state trial court errs[,] the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court." [*Id.* (citing *Rooker*, 263 U.S. 413; *Feldman*, 460 U.S. 462).]

*Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000). In other words, it applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. Further,

> [A] federal complainant cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief. If the district court is confronted with issues that are "inextricably intertwined" with a state judgment, the court is "in essence being called upon to review the state-court decision," and the originality of the district court's jurisdiction precludes such a review.

*United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (quoting *Feldman*, 460 U.S. at 482 n. 16) (citing *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317-18 (5th Cir. 1994)).

8

In *Flores v. Citizens State Bank of Roma, Texas*, appellants filed a civil rights and Racketeer Influenced and Corrupt Organizations Act (RICO) complaint against a bank, bank employees, and two constables after a constable removed various items from the appellants' place of business pursuant to a state court judicial foreclosure. 132 F.3d 1457, 1997 WL 803150, at *1 (5th Cir. 1997) (unpublished). The Fifth Circuit determined that the appellants' claims "ar[o]se solely from the state-court litigation and [were] 'inextricably intertwined' with the state court's judgment. The sole purpose of this action [was] to review the state court's foreclosure and seizure of property pursuant to the related writ of execution and, therefore, [it] cannot be reviewed in federal court." *Id.*

In *United States v. Shepherd*, the government filed suit on behalf of the Farmers Home Administration ("FmHA") in a federal district court in an attempt to set aside a judgment of the 121st JDC that confirmed the validity of a series of foreclosure sales, one of which extinguished a junior lien held by the FmHA. 23 F.3d 923, 924 (5th Cir. 1994). The government complained that John Shepherd schemed to extinguish the FmHA's junior lien by purchasing superior liens and conducting fraudulent foreclosure sales. *Id.* On appeal, the Fifth Circuit determined that the district court did not have jurisdiction to review or disturb the state court judgment. *Id.* at 925. Instead, the government had ample state court

9

remedies available to it, including filing a motion for new trial, seeking a bill of review proceedings, or by filing a writ of error in an intermediate appellate court. *Id.*

In *Carter v. Deutche Bank National Trust Company*, the plaintiff obtained a $499,900.00 mortgage loan secured by property located at 2418 Ormond Boulevard in Destrehan, Louisiana. No. 10-797, 2010 WL 3074323, at *1 (E.D. La. Aug. 2, 2010). After the plaintiff defaulted on the loan, the mortgagees filed a petition for executory process in the 29th JDC. *Id.* The state court issued a writ of seizure and sale. *Id.* The plaintiff never appealed this order, but, after a writ of possession was ordered in favor of the mortgagees, she filed a motion to vacate the sale in state court. *Id.* This motion was denied and the plaintiff appealed. *Id. Before the motion was denied*, however, the plaintiff filed a complaint in federal court, alleging that the mortgagees obtained the state court foreclosure "through fraud and that they violated her 14th amendment rights, her privacy rights, the Real Estate Settlement Procedures Act (RESPA), and the Truth in Lending Act (TILA)." *Id.* The defendants moved to dismiss the complaint pursuant to the *Rooker-Feldman* doctrine. *Id.* at *1-2. The court determined that it lacked jurisdiction to (1) "interfere with ongoing state proceedings that implicate important state interests" and (2) "to review state-court judgments." *Id.* at *2 (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1,

10

14 (1987); *Rooker*, 263 U.S. 413; *Feldman*, 460 U.S. 462). The plaintiff's claims that the state court judgment was fraudulently or wrongfully obtained were consequently dismissed, as were her claims that the defendants violated certain rights arising under federal law, because the latter claims were "inextricably intertwined" with the state court's judgment. *Id.*

Here, Defendant argues that the 23rd JDC ordered the seizure and sale of Plaintiff's property on July 8, 2014. Rec. Doc. 18-1 at 7 (citing Rec. Doc. 18-3 at 15).[2] On August 19, 2014, Plaintiff filed a "Verified Petition" seeking to enjoin the seizure and sale. *Id.* (citing Rec. Do. 18-3 at 50-57). On November 18, 2015, Judge Jessie M. LeBlanc of the 23rd JDC denied Plaintiff's petition. *Id.* (citing Rec. Doc. 18-3 at 163). On January 12, 2016, Judge LeBlanc allowed Plaintiff to file a devolutive appeal with the Louisiana Fifth Circuit. *Id.* (citing Rec. Doc. 18-3 at 174). After Plaintiff failed to file briefings, the Louisiana Fifth Circuit dismissed his appeal on June 6, 2016. *Id.* (citing Rec. Doc. 18-3 at 315). On February 1, 2016, Plaintiff asserted several claims in this Court in an attempt to enjoin the seizure and sale and to obtain damages. *See* Rec. Doc. 1 at ¶¶ 23-26.

Like *Flores*, *Shepherd*, and *Carter*, this Court lacks jurisdiction to review the state court's judgment. Plaintiff had

---

[2] Rec. Doc. 18-3 is Exhibit B attached to Defendant's motion. It will be cited according to the record document page number provided by this Court's CM/ECF system.

the opportunity to raise any objections to the writ of seizure and sale in the 23rd JDC and in the Louisiana Fifth Circuit. Because Plaintiff's "sole purpose" in this action is to obtain review of the state court's judgment of foreclosure, we lack original jurisdiction and Plaintiff's claims must be dismissed.

## IV. CONCLUSION

For the reasons outlined above,

**IT IS ORDERED** that Defendant's motion to dismiss (Rec. Doc. 18) is **GRANTED AS UNOPPOSED,** it appearing to the Court that Defendant's motion has merit.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims in the above-captioned matter are **DISMISSED WITHOUT PREJUDICE.**


A motion for reconsideration of this Order, based on the appropriate Federal Rule of Civil Procedure, if any, must be filed within thirty (30) days of this Order. The motion must be accompanied by an opposition memorandum to the original motion. Because such a motion would not have been necessary had a timely opposition memorandum been filed, the costs incurred in connection with the motion, including attorney's fees, may be assessed against the party moving for reconsideration. *See* Fed. R. Civ. P. 16, 83. A statement of costs and fees conforming to Local Rules 54.2 and 54.3 shall be submitted by all parties desiring to be awarded costs

and attorney's fees no later than eight (8) days prior to the noticed submission date of the motion for reconsideration.

New Orleans, Louisiana, this 21st day of February, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE